**In re Arthur & Mary WILLIAMS, Debtors.**

**Bankruptcy No. 80–01991–HP.**

United States Bankruptcy Court, S. D. Texas, Houston Division.

June 9, 1981.

Sam L. Stolbun, Houston, Tex., for Colonial Financial Serv.

Don J. Knabeschuh, Beaumont, Tex., for debtors.

Dan O'Connell, Houston, Tex., trustee.

## MEMORANDUM OPINION ON OBJECTION TO CONFIRMATION

E. H. PATTON, Jr., Bankruptcy Judge.

Before the court is an objection to confirmation by Colonial Financial Service, Inc. (hereinafter referred to as Colonial) to the confirmation of a Chapter 13 plan filed by the debtors, Arthur and Mary Williams. A hearing was held on March 27, 1981 and the matter was taken under advisement by the court.

Colonial is the assignee of two promissory notes on which the debtors are liable. The first note is one on which the debtors assumed payment in 1971; the second note

was given by the debtors as consideration for repairs to their home. Both notes are secured by deeds of trust on the debtors' residence. Also, both notes have clauses granting the holders the right to accelerate the notes for defaults in payments and both notes require the payment of attorney's fees if the notes are placed in the hands of an attorney for collection.

On October 2, 1979 Colonial acquired the home repairs note from Wilson Enterprises, which was the party with whom the debtors contracted for the home repairs. The deed of trust securing this note is second to the note which the debtors assumed in 1971. The debtors defaulted on the assumed note in February of 1980, and the debtors' home was posted for foreclosure. To protect its status as a second lien holder Colonial took an assignment of the assumed note from the holder, Bankers Savings and Loan Association. In June of 1980 the debtors defaulted on their payments to Colonial and on August 8, 1980 attorneys for Colonial sent the debtors letters informing them that the two notes had been accelerated and demanding full payment of both notes plus interest and attorney's fees. The debtors did not pay either note, and eventually a foreclosure sale was scheduled for November 4, 1980.

On November 3, 1980 the debtors filed their petition for relief under Chapter 13 of the Bankruptcy Code. As of the date of filing the debtors owed $9,571.25 on the assumed note and $5,186.55 on the home repairs note. In their second amended plan the debtors propose to cure the defaults on the two notes held by Colonial by paying the arrearages through the plan over 12 months and to pay the balance of the notes according to the terms of the notes. Colonial contends that since the notes were accelerated before the debtors filed their petition the debtors cannot cure the default under their plan but must tender the total amount plus the accrued expenses due on the notes. Thus, the first issue is whether the debtors are entitled to use their Chapter 13 plan to cure their pre-petition defaults notwithstanding the acceleration of the notes.

Paragraph (2) of § 1322(b) states that a Chapter 13 plan may

modify the rights of holders of secured claims other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims.

Paragraph (5) of § 1322(b) provides that a Chapter 13 plan may

notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

Colonial contends that when the debts were accelerated the notes became immediately due and payable, that Colonial's claim is not one "on which the last payment is due after the date on which the final payment under the plan is due" and that therefore the debtors may not cure the defaults as provided in § 1322(b)(5).

The debtors, on the other hand, point to paragraph (3) of § 1322(b), which allows debtors to "provide for the curing of any default." The debtors cite the court to *In re Soderlund*, 7 B.R. 44 (S.D.Ohio 1980) in which the court, under similar circumstances, indicated that (3) and (5) of § 1322(b) may be used "serially" first to cure pre-petition defaults and second, to maintain current payments while arrearages are cured even though there has been an acceleration of a mortgage debt on the debtor's principal residence. *See also In re Taddeo*, 9 B.R. 299, 7 B.C.D. 422 (Bkrtcy.E.D.N.Y.1980).

Another case, *Matter of LaPaglia*, 8 B.R. 937, 3 C.B.C.2d 717 (Bkrtcy.E.D.N.Y.1981) has reached the opposite result. There, the court looked to state law to determine the effect of acceleration on the maturity date of the debt. Since the creditor had accelerated the debt, and since New York law provided that acceleration changed the maturity date from that specified in the mortgage bond to the date of acceleration, the court held that § 1322(b)(5) could not be

**506**

used to cure the arrearages as the last payment on the mortgage bond was not due after the date on which the final payment under the plan was due.

■ Although § 1322(b)(3) states that any default may be cured or waived, it appears to the court that (b)(3) was not intended to apply where (b)(5) (which also provides that any default may be cured) is applicable. Congress provided in (b)(2) that the rights of holders of claims secured by the debtors' principal residence may not be modified by a plan. Congress further provided an exception to (b)(2) in (b)(5): a default may be cured within a reasonable time if the last payment is due after the last plan payment is due. It is not literally possible for both (b)(3) and (b)(5) to be applicable in this instance—either the debtors may cure any defaults on the debts on their home or they can cure those defaults only if the last payment is due after the final plan payment is due. Since (b)(5) makes specific reference to (b)(2), the court believes that Congress intended the "cure" provision of (b)(5) rather than the "cure" provision of (b)(3) to apply to claims secured only by a security interest in real property that is the debtor's principal residence. This view is supported by the legislative history. The Senate debate on Bankruptcy Code contains this reference to § 1322(b):

> Section 1322(b)(2) of the House amendment represents a compromise agreement between similar provisions in the House bill and Senate amendment. Under the House amendment, the plan may modify the rights of holders of secured claims other than a claim secured by a security interest in real property that is the debtor's principal residence. *It is intended that a claim secured by the debtor's principal residence may be treated with under section 1322(b)(5) of the House amendment.* (emphasis added).

124 Cong.Rec. S17,423 (daily ed. 1978).

This interpretation is bolstered by a review of § 1124(2)(A) and (B). This section allows a Chapter 11 plan to cure any default (other than a § 365(b)(2) default) and to reinstate the maturity of a debt accelerated after a default as such maturity existed before the default. The debtors urge that Congress would not have provided for this right in reorganization cases without intending that it also apply to Chapter 13 cases. However, the court thinks that § 1124(2)(B) demonstrates that Congress was aware of the problems presented by accelerated debts and could have given Chapter 13 debtors the right to cure and reinstate accelerated secured debts on the residences of Chapter 13 debtors but simply chose not to do so. Furthermore section 103, which deals with the applicability of chapters, does not make § 1124 applicable to proceedings under Chapter 13.

■ The notes held by Colonial were accelerated before the debtors filed their Chapter 13 petition. When the notes were accelerated the maturity dates were changed from the future to the present. *General Motors Acceptance Corp. v. Uresti,* 553 S.W.2d 660, 663 (Tex.Civ.App.—Tyler 1977, writ ref'd n. r. e.). The acceleration caused the notes to become immediately due; upon acceleration the debtors lost the right to pay all past due installments and to reinstate the original maturity date. *Iden v. Lippard,* 166 S.W.2d 185, 187 (Tex.Civ. App.—Waco 1942, no writ). The maturity date of the last payment under the notes does not extend past the date for the last payment under the plan, and the court concludes that the debtors may not cure the defaults and reinstate the original maturity date of the notes held by Colonial. *Matter of LaPaglia,* 8 B.R. 937, 3 C.B.C.2d at 721; *see also In re Ballard,* 4 B.R. 271, 276 (E.D. Va.1980); *In re Robertson,* 4 B.R. 213, 6 B.C.D. 375, 377 (Bkrtcy.D.Colo.1980). The debtors are not merely trying to cure their failure to perform their obligations but are attempting to modify an action (acceleration) taken by Colonial pursuant to its rights under the deeds of trust. To permit reinstatement of the maturity date would allow the debtors to modify a claim secured only by a security interest in the debtors' residence. Such modifications are forbidden by § 1322(b)(2).

Since the court has held that the debtors may not make up the arrearages as proposed in their plan, the plan cannot be confirmed and the court need not consider the questions of whether the payments proposed in the debtor's plan equal the allowed amount of Colonial's claim, or whether Colonial's claim includes attorney's fees.