**In the Matter of Leslie Melvin ALLEN, Mary Jean Allen, Debtors.**

**Bankruptcy No. 681–01640.**

United States Bankruptcy Court, N. D. Ohio.

Dec. 23, 1981.

George Hall, of Weldon, Huston & Keyser, Mansfield, Ohio, for objecting creditor.

Donald M. Miller, of G.S. Krainess Co., L.P.A., Canton, Ohio, for debtors.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JAMES H. WILLIAMS, Bankruptcy Judge.

A timely objection to the confirmation of debtors' Chapter 13 plan for the payment of their debts has been filed by Crestline Building and Loan Association (hereinafter Crestline) as assignee of Smith-Swain Company, the original lender under a mortgage loan obtained by the debtors. Crestline cites in support of its position that the plan may not be confirmed the unreported decision of the District Court for the Southern District of Ohio, Eastern Division in *In re Soderlund*, No. C–2–80–1080, decided August 25, 1981. Debtors have responded to the objection with a memorandum of law citing authorities contrary to *Soderlund.*

## FINDINGS OF FACT

1. Debtors, on September 3, 1971, executed a mortgage note and deed in favor of Smith-Swain Company in the amount of $15,900.00 with interest at the rate of seven percent (7%) per annum. The real estate which was the subject of the mortgage loan was and is debtors' principal place of residence. The note contains the following language:

> If any deficiency in the payment of any installment under this note is not made good prior to the due date of the next such installment, the entire principal sum and accrued interest shall at once become due and payable without notice at the option of the holder of this note. Failure to exercise this option shall not constitute a waiver of the right to exercise the same in the event of any subsequent default.

2. Crestline, as assignee, commenced a foreclosure proceeding in the Court of Common Pleas of Richland County, Ohio on April 30, 1981. The complaint asserted a balance due on debtors' mortgage loan of $13,955.26.

3. Debtors filed their petition for relief before this court on October 13, 1981, maintaining that their real estate has a present market value of $25,000.00. Admitting that they owe $600.00 as an arrearage on their mortgage, debtors propose to pay said sum through their plan and indicate that their current monthly mortgage payments will be

made directly to the mortgagee as the same become due. Unsecured creditors are to receive ten percent (10%) of amounts owed. Payments are to be made by the debtors to the trustee at the rate of $45.00 per week.

4. Crestline filed a proof of claim in which it rejected debtors' plan and asserted that that it is owed $13,955.26 in principal amount and $1,922.11 in additional charges, consisting of interest, "escrow negative balance" and late charges.

## ISSUE

May the debtors cure their default on their mortgage indebtedness through the vehicle of a Chapter 13 proceeding?

## DISCUSSION

Numerous courts have grappled with the question presented here, reaching diametrically opposing results under substantially identical fact situations. Critical to any determination is the interpretation of Section (b) of 11 U.S.C. § 1322, the provision of the Bankruptcy Code dealing with the contents of a debtor's plan for the payment of his debts. Specifically, we deal with subsections (b)(2), (3) and (5):

(b) Subject to subsections (a) and (c) of this section, the plan may—* * *

(2) modify the rights of holders of secured claims other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims;

(3) provide for the curing or waiving of any default; * * *

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

Although not fully articulated, Crestline's position, as appears from its reliance on the

Soderlund opinion and order, a copy of which is attached to its objection, is that the acceleration clause in the debtors' note which it holds enables it to declare the entire obligation due upon default and that it has done so by the filing of the foreclosure complaint in the state court.[1] The full obligation being thus due, Soderlund holds, subsection (b)(5) of Section 1322 is of no aid to debtors for they no longer owe an obligation "on which the last payment is due after the date on which the final payment under the plan is due;" they owe the entire obligation, now. Moreover, the District Court in Soderlund rejected the Bankruptcy Judge's view that:

* * * [S]ubsections (3) and (5) of § 1322(b) may be used serially to, first of all, provide for the maintenance of current payments during the life of the plan while arrearages are cured within a reasonable time. Since both the provisions of § 1322(b)(3) and § 1322(b)(5) indicate that a plan may provide for the curing of any default, it is immaterial that a prepetition acceleration clause may have been invoked by a creditor. The debtor has the choice, under the clear authority of § 1322(b)(3) of the Code, of providing in his plan for the curing of such pre-petition default and reinstating the terms of the mortgage.

*In re Soderlund*, 7 B.R. 44, 3 C.B.C.2d 255, 256 (Bkrtcy., S.D.Ohio, 1980).

A result opposite to that reached by the District Court in *Soderlund* is found in *In re Taddeo*, 9 B.R. 299, 7 B.C.D. 422, 4 C.B.C.2d 185 (Bkrtcy.E.D.N.Y., 1981), Bankruptcy Judge Parente taking the view that Federal law and not state law governs the question of acceleration and maturity and concludes, by analogizing to 11 U.S.C. § 1124, that curing is appropriate under Section 1322(b)(5) since such relief is accorded a business reorganizing under Chapter 11 of the Code.

From a strictly policy standpoint, it would appear that if Chapter 11 extends

---

1. There is no evidence before the court of any other step taken to effect acceleration nor, indeed, is there evidence that the foreclosure proceedings have resulted in a judgment granting Crestline the relief it sought.

the right of post-acceleration cure to the business debtor, *a fortiori* the generally more liberal Chapter 13 provisions should do the same for the consumer debtor.. In an effort to regain their financial footing, the debtors in both situations are seeking to retain their encumbered property, and to ultimately give the creditor his due in accordance with the payment schedule of their original agreement.

\*    \*    \*    \*    \*    \*

The legislative history of the Code nowhere manifests an intent by the drafters to preclude deacceleration of the Chapter 13 debtor's mortgage. In light of the purpose and spirit of Chapter 13, and in light of the accommodating nature of the language employed by the Code, this Court is persuaded and finds that a mortgagor-debtor under Chapter 13 may, at any time prior to actual conveyance of title to the encumbered property by foreclosure sale, employ Section 1322(b)(5) to cure all preacceleration defaults and reinstate the original payment schedule. Inasmuch as Section 1322(b)(5) requires the debtor to propose to cure the defaults within a 'reasonable time,' and since the mortgagee will be receiving the full balance in installments which were originally contemplated by the parties, the mortgagee is not impaired and has no cause to complain.

9 B.R. 299, 7 B.C.D. 422 at 425 and 426.

A similar conclusion was reached in *In re Breuer*, 1 C.B.C.2d 722, 726 (S.D.N.Y., 1980) where a judgment of foreclosure had been entered. Bankruptcy Judge Schwartzberg determined from his reading of legislative history that:

\* \* \* [I]t is intended that the debtor should have an opportunity to protect his assets by agreeing to repay his creditors while retaining his property during the Chapter 13 proceeding. The debtor's retention of his residence is palpably envisioned under Chapter 13 provided his plan and the proposed financial arrangements can pass muster.

Appealing as the results of these cases may be and harmonious as they may seem with the generally perceived humanitarian scheme of the Bankruptcy Code, they fly, in my judgment, directly in the face of substantive law to the contrary without the benefit of any clear expression of legislative intent to support their conclusions. Ohio law, as pointed out in *Soderlund* and *In re Land*, 14 B.R. 132, 8 B.C.D. 90 (Bkrtcy.N.D. Ohio, 1981) in which Bankruptcy Judge Ray reached a decision similar to that in *Soderlund*, is clear that upon acceleration the entire amount of indebtedness under a note and mortgage becomes due and that the filing of a foreclosure action constitutes such an acceleration. *Nixon v. Buckeye Building & Loan Company*, 18 Ohio L. Abs. 261 (1934) and, generally, 37 O Jur 2d *Mortgages*, Sec. 320. The court in *In re Taddeo*, *supra*, recognized a similar problem with New York law and dealt with it as follows:

It has been a long-held precept of bankruptcy law that the existence and effect of liens are ordinarily to be determined by state law. 4B Collier on Bankruptcy Section 702(2) (14th ed. 1976). However, state law cannot be applied where to do so would frustrate or debilitate federally enacted policy. *See* U.S. Const. Art. VI, section 2, and Art. I, section 8; *Hallenbeck v. Penn Mutual Life Insurance Company*, 323 F.2d 566 (1963) (Court made no mention of state law in holding that federal bankruptcy policy mandated the enjoining of state foreclosure action); *Matter of Queens Boulevard Wine & Liquor Corp.*, Doc.No. 72–B–297 (E.D.N.Y. Feb. 1, 1973) (lease forfeiture clause ostensibly valid under state law held unenforceable in light of Bankruptcy Act's policy of preserving otherwise viable businesses), *aff'd*, 503 F.2d 202 (2d Cir. 1974).

Indeed, numerous cases hold that the maturity date of the claim is to be determined under state law. *See In re Williams*, 11 B.R. 504, 4 C.B.C.2d 1028 (Bkrtcy.S.D.Tex., 1981); *In re Pearson*, 10 B.R. 189, 7 B.C.D. 567, 4 C.B.C.2d 57 (Bkrtcy.E.D.N.Y., 1981); *In re LaPaglia*, 8 B.R. 937, 7 B.C.D. 333, 3 C.B.C.2d 717 (Bkrtcy.E.D.N.Y., 1981); *accord, In re Land*, 14 B.R. 132, 8 B.C.D. 90 (Bkrtcy.N.D.Ohio, 1981).

It is less clear to me than it obviously was to the *Taddeo* court that a "federally enacted policy" is being frustrated or debilitated in this situation. Since Chapter 13 of Title 11 is silent on the right of the Bankruptcy Court to reinstate a preacceleration payment schedule, such a policy, if found to exist, must be inferred from its incorporation in Chapter 11. The contrary is equally plausible as pointed out in *In re Williams*, 11 B.R. 504, 4 C.B.C.2d 1028 (Bkrtcy.S.D. Tex., 1981) where the court, at page 1031, noted:

> However, the court thinks that § 1124(2)(B) demonstrates that Congress was aware of the problems presented by accelerated debts and could have given Chapter 13 debtors the right to cure and reinstate accelerated secured debts on the residences of Chapter 13 debtors but simply chose not to do so. Furthermore section 103, which deals with the applicability of chapters, does not make § 1124 applicable to proceedings under Chapter 13.

■■■ It must, in my opinion, be found, therefore, that subsection (b)(5) of Section 1322 will not avail the debtor whose note has been accelerated and the entire balance thereon declared due and owing, as by, for instance, the filing of a foreclosure action.

The presence of subsection (5) appears to me to make subsection (3) inapplicable in this situation. As stated in *In re Williams, Id.*, 11 B.R. 504, 4 C.B.C.2d at page 1030:

> Although § 1322(b)(3) states that any default may be cured or waived, it appears to the court that (b)(3) was not intended to apply where (b)(5) (which also provides that any default may be cured) is applicable. Congress provided in (b)(2) that the rights of holders of claims secured by the debtor's principal residence may not be modified by a plan. Congress further provided an exception to (b)(2) in (b)(5): a default may be cured within a reasonable time if the last payment is due after the last plan payment is due. It is not literally possible for both (b)(3) and (b)(5) to be applicable in this instance—either the debtors may cure any defaults on

the debts on their home or they can cure those defaults only if the last payment is due after the final plan payment is due. Since (b)(5) makes specific reference to (b)(2), the court believes that Congress intended the 'cure' provision of (b)(5) rather than the 'cure' provision of (b)(3) to apply to claims secured only by a security interest in real property that is the debtor's principal residence.

The court proceeds to observe that the legislative history supports the view that subsection (b)(5) offers the exclusive method for dealing with a default involving a debtor's principal residence and indeed, the following is to be found in the Senate debate:

> Section 1322(b)(2) of the House amendment represents a compromise agreement between similar provisions in the House bill and Senate amendment. Under the House amendment, the plan may modify the rights of holders of secured claims other than a claim secured by a security interest in real property that is the debtor's principal residence. *It is intended that a claim secured by the debtor's principal residence may be treated with under section 1322(b)(5) of the House amendment.* (emphasis added)

124 Cong. Rec. S. 17424 (daily ed. 1978)

Inasmuch as the acceleration of debtors' note caused the entire sum to become immediately due, the maturity date of the last payment does not extend past the date of the last payment under the plan. Therefore, the only exception to subsection (b)(2) not being satisfied, the debtors' plan may not be confirmed.

■ It is noted that Crestline's objection to confirmation seeks additional relief in the form of the lifting of the stay order in effect by virtue of the filing debtors' Chapter 13 proceeding. Such relief is attainable only upon the commencement of an adversary proceeding in accordance with Part VII of the Rules of Bankruptcy Procedure and Crestline's motion for such relief will thus be ordered dismissed.

## CONCLUSIONS OF LAW

1.  The only situation in which the rights of a holder of a claim secured by an interest in real property that is the debtors' principal residence may be modified, is one which satisfies Section 1322(b)(5)—where any default will be cured within a reasonable time and the last payment on the obligation in question is due after the date on which the final payment under the plan is due.

2.  Upon acceleration of the maturity date of a mortgage note, which acceleration may occur with the filing of a foreclosure action, the obligors on such note lose their right to pay all past due installments and reinstate the original maturity date.

3.  The entire balance of the mortgage note being immediately due, subsection (b)(5) of Section 1322 has no application and the court may not confirm the debtors' plan.