**In re Walter J. (James) GWINN, Debtor.**

**Bankruptcy No. 2-83-00834.**

United States Bankruptcy Court,
S.D. Ohio, E.D.

Nov. 22, 1983.

Mitchel D. Cohen, Columbus, Ohio, for debtor.

Stephen R. Buchenroth, Columbus, Ohio, for Waterfield.

Frank M. Pees, Worthington, Ohio, Chapter 13 trustee.

## ORDER CONFIRMING DEBTOR'S CHAPTER 13 PLAN

GRADY L. PETTIGREW, Bankruptcy Judge.

The matter before the Court is the objection of Waterfield Mortgage Co. (Waterfield) to the confirmation of the debtor's proposed Chapter 13 Plan. For the reasons set out below, this Court finds that the objection is not well taken and orders that the debtor's Plan be confirmed.

*Facts*

The facts in this matter are not disputed. In August of 1980, the debtor gave Waterfield Mortgage Co. a first mortgage on his principal place of residence to secure a loan of $37,000.00. The note and mortgage required the debtor to make monthly payments of $417.00 to Waterfield. This was Waterfield's only security.

Since April 1, 1982, the debtor has failed to make any of the required payments. After the debtor missed several payments, Waterfield exercised its contractual right to accelerate the note. This was done on September 22, 1982. On October 15, 1982, Waterfield commenced foreclosure proceedings in the Franklin County Court of Common Pleas. On December 23, 1982, that court, in Case No. 82CV–10–6095, entered a judgment for Waterfield in the amount of $36,754.82, plus interest at an annual rate of 11.5% from April 1, 1982. A sheriff's sale was scheduled for March 18, 1983.

On March 17, 1983, one day before the scheduled sale, the debtor filed his petition for relief under Chapter 13 of the Bankruptcy Code. Upon the filing of the petition, the automatic stay imposed by 11 U.S.C. § 362 became effective to prevent the scheduled sale. The debtor has proposed a Plan that would cure the arrearage on the mortgage over a period of 20 months and would reinstitute current monthly mortgage payments outside the Plan.

On April 20, 1983, Waterfield filed a proof of claim in the amount of $42,522.20, which included the principal amount due on the judgment of December 23, interest and other miscellaneous charges. On that same day, Waterfield filed a lengthy memorandum in opposition to the confirmation of the debtor's Plan. On April 28, 1983, the debtor filed an objection to Waterfield's claim, arguing that by virtue of the proposed deceleration and reinstitution of Waterfield's mortgage, only the arrearages of $4,500.00 were due it. On May 24, 1983, a hearing was held on the confirmation of the debtor's Plan. The matter was taken under advisement.

## Issue Presented

Is it possible, through Chapter 13 of the Bankruptcy Code, for a debtor to decelerate and reinstitute a mortgage that has been accelerated and brought to judgment prior to the filing of the debtor's bankruptcy petition?

## Arguments of the Parties

Waterfield has advanced several arguments in opposition to the confirmation of the debtor's Plan based on the language of the Bankruptcy Code, perceived Congressional intent, state law and related policy matters.

Waterfield's first argument is that the deceleration and reinstitution of the mortgage violates the mandate of 11 U.S.C. § 1322(b)(2)[1] in that it modifies Waterfield's rights in regard to the mortgaged property. Waterfield also argues that the debtor cannot rely on § 1322(b)(5) of the Bankruptcy Code as authority for the deceleration and reinstitution of the mortgage as, due to the acceleration of the mortgage, it is not a claim "... on which the last payment is due after the date on which the final payment under the plan is due." 11 U.S.C. § 1322(b)(5).

Waterfield's third argument is based on state law. It argues that according to Ohio

law, the underlying obligation, the mortgage note, merged with the judgment it obtained in state court. From there, it argues that since the obligation no longer exists in its original form, it cannot be revived.

Waterfield also argues that Congress did not intend § 1322(b)(5) to allow for the deceleration of accelerated debts. It points to the absence of any provision in Chapter 13, such as 11 U.S.C. § 1124(2),[2] which specifically authorizes such a deceleration.

Waterfield also advances two policy based arguments. The first is that allowing debtors to decelerate and reinstitute mortgages already reduced to judgment would create much uncertainty as to the finality of state court judgments. It also argues that, on a broader level, allowing deceleration could lead to an increased reluctance on the part of lenders to make home mortgage loans.

In response to the foregoing, the debtor advances several arguments: The debtor first argues that the deceleration and reinstitution of the note and mortgage is not a modification of Waterfield's rights within the meaning of § 1322(b)(2).

The debtor also argues that the legislative history of § 1322(b)(5), as discussed in

1. 11 U.S.C. § 1322(b)(2), (3) and (5)

(b) Subject to subsections (a) and (c) of this section, the plan may—...

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims;

(3) provide for the curing or waiving of any default; ...

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due; ...

2. 11 U.S.C. § 1124(2)

§ 1124. Impairment of claims or interests. Except as provided in section 1123(a)(4) of this title, a class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class, the plan—...

(2) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default—

(A) cures any such default, other than a default of a kind specified in section 365(b)(2) of this title, that occurred before or after the commencement of the case under this title;

(B) reinstates the maturity of such claim or interest as such maturity existed before such default;

(C) compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and

(D) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest; ...

the Second Circuit case of *In re Taddeo,* 685 F.2d 24 (2d Cir.1982), indicates that Congress intended that section to allow for "curing of defaults," thus eliminating the event that "triggered" the acceleration and that, therefore, Congress necessarily contemplated the deceleration and reinstitution of previously accelerated mortgages.

Finally, the debtor argues that the fact that Waterfield obtained a judgment is not dispositive. Relying again on *Taddeo, supra,* the debtor argues that the bankruptcy [3] and supremacy [4] clauses of the United States Constitution mandate that such a judgment should fall before the need for a uniform interpretation of the Bankruptcy Code.

### Existing Authorities

There is a split of authority on the issue at hand, both nationally and within the Southern District of Ohio.

Within this District, the Bankruptcy Courts have tended to hold that mortgage deceleration is an option available to Chapter 13 debtors, *First Investment Co. v. Custer,* 18 B.R. 842 (Bkrtcy.S.D.Ohio 1982), *In re Hubbard,* 23 B.R. 671 (Bkrtcy.S.D.Ohio 1982); *In re Sapp,* 11 B.R. 188 (Bkrtcy.S.D. Ohio 1981); *In re McCann,* 27 B.R. 678 (Bkrtcy.S.D.Ohio 1982); *In re Soderlund,* 7 B.R. 44 (Bkrtcy.S.D.Ohio 1980), but see *Contra In re Anderson,* 16 B.R. 697 (Bkrtcy.S.D. Ohio 1982). The District Courts have split on this issue. One case came down against deceleration in *In re Soderlund,* 18 B.R. 12 (S.D.Ohio 1981). On the other hand, another has held that deceleration and reinstitution of a previously accelerated mortgage is permissible under Chapter 13 of the Bankruptcy Code. *In re Morrison,* 35 B.R. 996 (S.D.Ohio 1983).

On a national level, there is a similar split of authority. An examination of the re-

ported cases indicates that five basic positions have emerged. A small minority of courts have held that deceleration/reinstitution is not available once the mortgagee has exercised his contractual right to accelerate, regardless of whether or not the mortgagee has obtained a judgment. See *In re Soderlund* (Dist.Ct.), *supra; Matter of Allen,* 17 B.R. 119 (Bkrtcy.N.D.Ohio 1981); *In re La Paglia,* 8 B.R. 937 (Bkrtcy.E.D.N.Y.1981).

Another, more sizeable group of cases have held that while deceleration is possible prior to judgment, it is no longer available once the mortgagee has obtained a judgment on the mortgage note. See *In re Anderson, supra; In re White,* 22 B.R. 542 (Bkrtcy.D.Del.1982); *In re Mattocks,* 15 B.R. 379 (Bkrtcy.E.D.N.Y.1981); *In re Maiorino,* 15 B.R. 254 (Bkrtcy.D.Conn.1981); *In re Jenkins,* 14 B.R. 748 (Bkrtcy.N.D.Ill. 1981); *In re Land,* 14 B.R. 132 (Bkrtcy.N.D. Ohio 1981); *Matter of Wilson,* 11 B.R. 986 (Bkrtcy.S.D.N.Y.1981); *In re Pearson,* 10 B.R. 189 (Bkrtcy.E.D.N.Y.1981); *In re Canady,* 9 B.R. 428 (Bkrtcy.D.Conn.1981); *In re Britton,* 35 B.R. 373 (N.D.Ind.1982). While this is a more widely held view than the *per se* prohibition espoused by the first group, it is still the minority view and has had only one recent convert. *In re Clark,* C.C.H. Bankr. Serv. ¶ 69,341, 32 B.R. 711 (W.D.Wis.1983).

The third approach likewise allows deceleration and reinstitution, but does not speak to what impact, if any, a judgment would have on the availability of this option. See *In re Morrison, supra; In re Briggs,* 25 B.R. 317 (Dist.Ct.N.N.D.1982); *In re Davis,* 16 B.R. 473 (D.Kan.1981); *In re Cheeks,* 24 B.R. 477 (Bkrtcy.M. D.Ala.1982); *Matter of Wilder,* 22 B.R. 294 (Bkrtcy.M.D.Ga.1982); *In re Rippe,* 14 B.R. 367 (Bkrtcy.S.D.Fla.1981); *First Investment Co. v. Custer,* 18 B.R. 842 (Bkrtcy.S.D.

---

**3.** "The Congress shall have power ... to establish ... uniform laws on the subject of bankruptcy throughout the United States." U.S. Const. Art. I, § 8.

**4.** "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall

be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. Art. VI.

Ohio 1982); *In re Sapp,* 11 B.R. 188 (Bkrtcy. S.D.Ohio 1981); *In re Beckman,* 9 B.R. 193 (Bkrtcy.N.D.Iowa 1981). This view is supported by several District Courts and would seem to be the overwhelming majority view.[5]

The fourth view holds that deceleration and reinstitution are possible even after the mortgagee has obtained a judgment on the accelerated mortgage note. *In re Taddeo,* 685 F.2d 24 (2d Cir.1982); *In re Acevedo,* 26 B.R. 994 (Dist.Ct.E.D.N.Y.1982); *In re Mueller,* 18 B.R. 851 (Bkrtcy.W.D.Ark.1982); *In re Young,* 22 B.R. 620 (Bkrtcy.N.D.Ill. 1982); *In re Hubbard,* 23 B.R. 671 (Bkrtcy. S.D.Ohio 1982); *In re McSorley,* 24 B.R. 795 (Bkrtcy.N.J.1982); *In re Tuchman,* 29 B.R. 39 (Bkrtcy.S.D.N.Y.1983); *In re Hardin,* 16 B.R. 810 (Bkrtcy.N.D.Tex.1982); *In re Taylor,* 21 B.R. 179 (Bkrtcy.W.D.Mo.1982); *In re Smith,* 19 B.R. 592 (Bkrtcy.N.D.Ca.1982); *In re McCann,* 27 B.R. 678 (Bkrtcy.S.D.Ohio 1982). This seems to be a rapidly growing view and has been adopted by more appellate level courts than have any of the other views.

The fifth view is perhaps the most adventurous of all. It holds that deceleration and reinstitution are available even after the foreclosure sale, as long as the state redemption period has not expired by the time the debtor files his bankruptcy petition. See *In re Chambers,* 27 B.R. 687 (Bkrtcy.S.D.Fla.1983); *In re Kokkinis,* 22 B.R. 353 (Bkrtcy.N.D.Ill.1982); *In re Thompson,* 17 B.R. 748 (Bkrtcy.W.D.Mich. 1982); *In re Gooden,* 21 B.R. 456 (Bkrtcy.N. D.Ga.1982); *In re Ivory,* 32 B.R. 788, 10 B.C.D. 1327 (Bkrtcy.D.Or.1983).

Over all, it appears that the growing majority of courts are holding that deceleration is permissible, even after the mortgagee has reduced his claim to judgment.[6]

### Applicable Statutes

The decisions and arguments for and against deceleration have been based on various sections of the Bankruptcy Code. However, most seem to deal with the various subsections of 11 U.S.C. § 1322(b).

As a starting point, it is important to note that § 1322(b)(2) prohibits the modification of the rights of a creditor whose only security is the real property comprising the debtor's principal residence. Hence, any proposed mortgage deceleration must meet this statutory standard. However, many courts, including the Second Circuit Court of Appeals, have found ways around this provision.

A number of cases have dealt with the rather general language of § 1322(b)(3).[7] This section allows a debtor to "cure any default" through his Plan. A number of courts have held that this section allows the curing of default on the type of mortgages described by § 1322(b)(2).[8] *In re Taddeo, supra; In re Acevedo, supra; In re McSorley, supra; In re Chambers, supra.* However, there are a few cases which have held that (b)(3) is not available to cure defaults on (b)(2) type mortgages. *In re Soderlund* (Dist.Ct.), *supra; Matter of Allen, supra.*[9]

The more frequently cited statute is § 1322(b)(5).[10] While there has been considerable division as to whether or not the

---

**5.** While there are not an overwhelming number of cases that have expressly stated the proposition that prejudgment deceleration is permissible, the prevelence of this view becomes more obvious when one considers that this proposition is inherent in those cases which permit deceleration and reinstitution after a judgment has been obtained or a foreclosure sale has been held. Taken together, these cases are both more numerous and from higher level courts.

**6.** A review of the reported cases indicates only one court has disallowed deceleration since the Second Circuit Court of Appeals announced its

decision in *In re Taddeo, supra.* See *In re Clark, supra.*

**7.** See Note 1, *supra.*

**8.** See Note 1, *supra.*

**9.** The decisions in *In re Soderlund, supra,* and *In re Morrison, supra,* are both based on § 1322(b)(5), *supra,* rather than § 1322(b)(3). Therefore, this Court is bound to follow their reasoning as to the applicability of these subsections.

**10.** See Note 1, *supra.*

facts in the particular case are such that (b)(5) can be used to decelerate the mortgage in question, the courts have almost uniformly held that Congress intended that section to deal with the curing of defaults in (b)(2) type mortgages. *United Companies Financial Corp. v. Brantley*, 6 B.R. 178 (Bkrtcy.N.D.Fla.1980); *In re Soderlund, supra; In re Taddeo, supra.*

A few courts have relied on their general equitable powers under 11 U.S.C. § 105(a) to deal with the issue. These courts have employed an analysis similar to that applied by the Fourth Circuit Court of Appeals in the case of *Hallenbeck v. Penn Mutual Life Ins. Co.,*[11] 323 F.2d 566 (4th Cir.1963), or have relied on rulings by state courts in similar situations. See *In re Thompson, supra; First Investment Co. v. Custer, supra.* However, these courts have used this provision in addition to or in reinforcement of their rulings on § 1322(b)(5).[12]

*Arguments Against Allowing Deceleration*

Waterfield has advanced several arguments against allowing a Chapter 13 debtor to decelerate a previously accelerated mortgage. They are based on the language of the Code, perceived congressional intent and overall policy considerations.

As discussed above, most of the mortgage deceleration cases center on the applicability and scope of § 1322(b)(5). Perhaps the most frequently advanced argument against deceleration is based on the language of (b)(5). That section states that the Plan may, "(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim *on which the last payment is due after the date on which the final payment under the plan is due.*" (Emphasis added.) Waterfield, as have a number of mortgagees, has seized on the underscored language and argued that since an accelerated debt is by its very nature due immediately, it cannot be cured under (b)(5) because it is not one on which the last payment is due after the date on which the final payment under the Plan is due. The following excerpt from *Matter of Allen, supra,* at 121 states this argument well.

Although not fully articulated, Crestline's position, . . . is that the acceleration clause in the debtors' note which it holds enables it to declare the entire obligation due upon default and that it has done so by the filing of the foreclosure complaint in the state court. The full obligation being thus due, Soderlund holds, subsection (b)(5) of Section 1322 is of no aid to debtors for they no longer owe an obligation "on which the last payment is due after the date on which the final payment under the plan is due;" they owe the entire obligation, now.

This argument is based on the effect of the initial acceleration as determined by state law.[13]

This argument has met with mixed results. While it was generally accepted when this issue first came up, *In re Soderlund, supra; Matter of Allen, supra; In re LaPaglia, supra; In re Anderson, supra; In re Land, supra; In re Britton, supra,* it seems to have fallen into disrepute as the matter has been more frequently litigated. The courts rejecting this argument reason

---

**11.** The *Hallenbeck* case dealt with a similar issue under Chapter XIII of the Chandler Act. It held that the court may use its general equitable powers to enjoin secured creditors from foreclosing on their collateral when the following conditions are present:

"(1) The injunction or stay must be necessary to preserve the debtor's estate or to carry out the Chapter XIII plan; (2) the granting of the injunction must not directly or indirectly impair the security of the lien; and (3) the owner of the secured indebtedness must not be required to accept less than the full periodic payments specified in his contract." 323 F.2d at 572.

See also *Chatman v. Daughtery*, 527 F.2d 691 (6th Cir.1975).

**12.** The same is generally true of those decisions which have held § 1322(b)(3) applicable.

**13.** However, there is considerable authority for the proposition that state law should not be dispositive of this issue. This is discussed more thoroughly in the textual material accompanying Notes 25 and 26, *infra.*

that the "last payment" language refers to when the last payment would have been due under the original mortgage note had it not been accelerated. They hold that such an interpretation is necessary to give effect to the curative effect that they felt Congress intended (b)(5) to have. See *In re Taddeo, supra; In re Morrison, supra; In re Simpkins, supra; In re Thompson, supra; First Investment Co. v. Custer, supra.* This analysis has been used in both pre- and post-judgment cases.

Waterfield's second argument against deceleration is based more on what is not in the Code than what is. 11 U.S.C. § 1124(2) expressly provides that a Chapter 11 debtor may decelerate and reinstitute a debt that has been accelerated, regardless of any agreement or state law to the contrary.[14] A number of courts have held that Congress' failure to include a similar provision in Chapter 13 of the Bankruptcy Code indicates that it did not intend to make such an option available to Chapter 13 debtors. See *Matter of Allen, supra; In re Williams,* 11 B.R. 504 (Bkrtcy.S.D.Tex.1981); *In re Maiorino, supra; In re Jenkins, supra.*

This analysis has also been rejected by the later decisions. Two different counter-arguments have been offered. The first is policy based and goes as follows:

> From a strictly policy standpoint, it would appear that if Chapter 11 extends the right of post-acceleration cure to the business debtor, a fortiori the generally more liberal Chapter 13 provisions should do the same for the consumer debtor. In an effort to regain their financial footing, the debtors in both situations are seeking to retain their encumbered property, and to ultimately give the creditor his due in accordance with the payment schedule of their original agreement. *In re Taddeo,* 9 B.R. 299, 303 (Bkrtcy.E.D.N.Y.1981).

See also *In re Kokkinis, supra.* The second counter-argument is based on the structural differences between Chapters 11 and 13. The Second Circuit Court of Appeals explained why the absence of a provision as explicit as 1124 in Chapter 13 does not

necessarily mean that Congress did not intend to make similar options available to the Chapter 13 debtor.

That (1124) section determines who has the right to vote on a Chapter 11 plan. Those parties with "impaired" claims or interest can vote, and § 1124(1) declares that any change in legal, equitable or contractual rights creates impairment. Having defined impairment in the broadest possible terms, Congress carved out a small exception to impairment in § 1124(2) providing that curing a default, even though it inevitably changes a contractual acceleration clause, does not thereby "impair" a creditor's claim. "The holder of a claim or interest who under the plan is restored to his original position, when others receive less or get nothing at all, is fortunate indeed and has no cause to complain." S.Rep. No. 989, 95th Cong., 2d Sess. 120 (1978). Section 1124(2) merely takes away the creditor's right to vote in the event of cure; the authority to cure is found in § 1123(a)(5)(G) in plain language similar to § 1322(b). See *In re Thompson,* 17 B.R. 748, 753 (Bkrtcy.W.D.Mich.1982). In short, "curing a default" in Chapter 11 means the same thing as it does in Chapters 7 or 13: the event of default is remedied and the consequences are nullified. A state law to the contrary must fall before the Bankruptcy Code. *In re Taddeo, supra,* at 28, 29.

See also *In re Thompson, supra.*

Waterfield's third argument against deceleration is based on state law and is limited to cases in which the mortgagee has obtained a judgment against the debtor. Courts adopting this analysis hold that since under the law of their forum state a mortgage is merged into any judgment that may be obtained on the debt, there is nothing to be revived. An example of this sort of reasoning is to be found in the following excerpt from *In re Maiorino, supra:*

> Branford, on the other hand, claims that the rights of the parties are deter-

---

**14.** See Note 2, *supra.*

mined by state law which provides that when a default is followed by a judgment of strict foreclosure, the mortgage is merged into the judgment leaving the debtors nothing more than the right to redeem by payment of the entire debt. Branford further argues that Code § 1322(b)(5) does not disturb that result. A similar position was taken by the bankruptcy court in this district in *In re Canady*, 9 B.R. 428, 7 B.C.D. 749 (1981). I find the reasoning set forth in Canady persuasive. The court stated:

> The debtors cannot reactivate a mortgage that was already merged into a judgment of strict foreclosure before the debtors filed their Chapter 13 petition . . .

At the time that the debtors filed their Chapter 13 petition, the plaintiff's secured claim had been merged into a judgment of foreclosure under the imprimatur of the Connecticut State Court. Accordingly, the entire judgment lien must be paid under the plan. This court cannot resurrect a mortgage that has been laid to final rest by a state court. *In re Canady*, supra, 9 B.R. at 430, 7 B.C.D. at 750.

The judgment of strict foreclosure, then, replaces the mortgage by establishing new and different rights, leaving the debtor without a right to reinstate the superseded mortgage. Thus, cure is no longer possible as a result of the operation of Connecticut law.[15]

*In re Maiorino, supra*, at 256, 257.

See also *In re Jenkins, supra*, and *In re Canady, supra*. As will be discussed elsewhere, this argument has been questioned on constitutional and policy based grounds.[16]

Waterfield's remaining arguments against deceleration are based on policy grounds. The first concerns the effect that deceleration would have on the finality of state court judgments. The argument was summarized by Judge Goetz in *In re Pearson, supra*, at 194.

> To hold that, nevertheless, the bankruptcy court could approve a Chapter 13 plan that paid out over the life of the plan only the arrearages, not the full judgment would create enormous uncertainty for all concerned—the mortgagor, the mortgagee, and the courts.
>
> What would be the status of an unsatisfied judgment when the Chapter 13 plan terminated after three or five years, and the jurisdiction of the bankruptcy court ended? Could the mortgagee then seek enforcement of his judgment? If not, why not, since the judgment had never been satisfied? True, the Chapter 13 plan had cured arrearages, but it had not paid off the judgment. It would be up to the state courts to decide to what extent the judgment survived. How this would be done procedurally is unclear. Equally unclear is what the result would be.

See also *In re Britton, supra*.

█ The fatal flaw in this argument is that it overlooks the broad equitable powers possessed by the bankruptcy courts by virtue of 11 U.S.C. § 105 and 28 U.S.C. §§ 1481, 1651.[17] These powers, when used in conjunction with state law, are more than sufficient to dispose of any potential uncertainty as to the effect of any state court judgment. By issuing an order, at

---

**15.** Ohio law also provides for the merger of the mortgage note into the judgment. See 32 Ohio Jur.2d 375 (Jdg. § 175).

**16.** See Note 13, *supra*.

**17.** It is settled law that the federal courts in general and the bankruptcy courts in particular have broad powers to issue any order necessary to protect and effectuate their judgments. *Local Loan Co. v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934); *Continental Illinois National Bank & Trust Co. v. Rock Island Railway Co.*, 294 U.S. 648, 675, 55 S.Ct. 595, 605, 79 L.Ed. 1110 (1935); *Holmes v. Rowe*, 97 F.2d 537 (9th Cir.1938); *Evans v. Dearborn Machinery Movers Co.*, 200 F.2d 125 (6th Cir.1953). It has further been noted that bankruptcy courts have the power to issue extraordinary writs to further the reorganization of debtors under their protection, *Evans v. Dearborn Machinery Movers, supra*, even after the reorganization proceedings have been concluded.

the time of confirmation, restraining the mortgagee from taking any further steps to enforce its mortgage, unless certain specified events occur,[18] the debtor would be given protection against any further attempts at foreclosure both during the pendency of the Plan and afterwards. Then, if the debtor successfully completes his Plan, the court could use its equitable powers to order the mortgagee to take whatever actions are necessary to remove from record any certificates of judgment or decrees of foreclosure that may be pending. Finally, upon the successful completion of the Plan, the court could order the mortgagee to join with the debtor to petition the state court for relief from the foreclosure judgment.[19] In this way, the effect of the previous judgment could be settled one way or the other. If the debtor should again fall into default, the injunction could be vacated and the mortgagee allowed to proceed with its foreclosure. If, on the other hand, the debtor cures the previous default and maintains his current obligations on the reinstated mortgage, the final mandatory injunction would enable him to eliminate the cloud on his title imposed by the state court judge.

The final argument against deceleration concerns the effect that deceleration could have on the availability of home loans. Again Judge Geotz's opinion in *In re Pearson, supra,* at 195, accurately summarizes the argument:

> Permitting a debtor to reinstate the original terms of a defaulted mortgage after a judgment, providing only that it was done prior to sale, would necessarily affect adversely the home mortgage market by making such mortgages less attractive to investors.

See also *In re Thompson, supra; In re Britton, supra.*

While this argument sounds viable in the abstract, it is not backed by empirical evidence. On the contrary, Federal Reserve statistics indicate that inspite of the great liberalization of the bankruptcy laws affected by the 1978 Code, the volume of consumer loans has continued to grow. See *Hearings On Senate Bill 445: Hearings Before The Senate Judiciary Committee,* 98th Cong., 1st Sess. (Statement of Bankruptcy Judge Joe Lee on behalf of the National Bankruptcy Conference). Hence, it becomes apparent that the dire predictions as to the effect of post judgment deceleration are tenuous at best, as were similar predictions as to the impact of the 1978 Bankruptcy Code.

*Arguments in Favor of Deceleration*

■ · As mentioned earlier, the debtor argues that the deceleration and reinstitution of the mortgage in question is not a modification of Waterfield's rights within the meaning of § 1322(b)(2). This Court agrees. The term "modify" is not defined in the Code. However, it is commonly understood to mean a change in kind, degree or amount. Indeed, *Webster's Third International Dictionary of The English Language* (Unabridged 1976), at 1452, defines the term modify as "to make basic or important changes in". In the present case, the debtor does not propose to make any basic changes in the terms of the mortgage. The Plan does not propose to lower the monthly payments to Waterfield. It does not intend to stretch out the period of the payments or to make the obligation conditional. To the contrary, the debtor proposes to reinstitute the contract as it was originally formed, albeit with a minor delay in the payment in the arrearages.[20] To say

---

**18.** For example, the court could order that the injunction would automatically cease should the debtor fail to make a specified number of payments under either the Plan or the reinstituted mortgage.

**19.** See Rule 60(b)(4), (5) of the Ohio Rules of Civil Procedure and *Wurzelbacher v. Kroeger,* 40 Ohio St.2d 90, 320 N.E.2d 666 (1974).

**20.** In the present case, the debtor proposes to cure the arrearages on Waterfield's mortgage in twenty (20) months. In the more metropolitan counties of the Southern District of Ohio, much lengthier delays in the final resolution of the foreclosure sales are common. Hence, if this delay can be thought of as a modification of the mortgagee's rights, it is probably a modification that would be to the mortgagee's benefit.

that this would "modify" Waterfield's rights would be to stretch this word beyond its commonly understood meaning.[21] Furthermore, this view is supported by the weight of recent authority. See *In re Taddeo, supra; In re Acevedo, supra; In re McSorley, supra; In re Chambers, supra.*[22]

■ The debtor also maintains that deceleration and reinstitution of a previously accelerated mortgage is inherent in the concept of "cure" as it is used in the Bankruptcy Code. This Court agrees. The Second Circuit Court of Appeals expressed this well in the case of *In re Taddeo, supra,* at 26, 27.

> When Congress empowered Chapter 13 debtors to "cure defaults," we think Congress intended to allow mortgagors to "deaccelerate" their mortgage and reinstate its original payment schedule. We so hold for two reasons. First, we think that the power to cure must comprehend the power to "de-accelerate." This follows from the concept of "curing a default." A default is an event in the debtor-creditor relationship which triggers certain consequences—here, acceleration. Curing a default commonly means taking care of the triggering event and returning to. pre-default conditions. The consequences are thus nullified. This is the concept of "cure" used throughout the Bankruptcy Code.

Indeed, this conforms to the commonly accepted meaning of the word "cure," which is ordinarily understood to mean "to *restore* to health, soundness or normality." *Webster's Third New International Dictionary of The English Language* (Unabridged 1976), at 555. (Emphasis added.)[23] Hence, in accordance with the commonly understood meaning of the concept of cure, and the weight of recent authority,[24] this Court holds that the deceleration and reinstitution of a previously accelerated mortgage, even if brought to judgment, may be accomplished through the application of the curative provisions of § 1322(b)(5).

■ Furthermore, this Court agrees with the debtor that the fact that Waterfield obtained a judgment on this mortgage is not dispositive. The supremacy clause of the United States Constitution requires the federal courts to disregard state law if it would frustrate the implementation of a federal statutory scheme, enacted by Congress pursuant to one of its enumerated powers. In this case, the Court feels that allowing Ohio law on the effect of a judgment to dictate the availability and extent of a debtor's right to relief under the federal bankruptcy laws would frustrate two clearly expressed Congressional goals; the rehabilitation of individuals with regular income and encouraging such debtors to pay off their debts over time rather than to discharge them *in toto* through Chapter 7.

It has been recognized by the courts involved with bankruptcy matters that it is in the best interests of all involved to allow a debtor to retain his home, if feasible. It is a significant motivating factor for the debtor to attempt to pay off his debts through Chapter 13 rather than discharge them

---

**21.** It is a fundamental rule of statutory construction that otherwise undefined words in a statute are to be given their ordinary meaning. *Burns v. Alcala,* 420 U.S. 575, 95 S.Ct. 1180, 43 L.Ed.2d 469 (1975); *Jones v. Liberty Glass Co.,* 332 U.S. 524, 68 S.Ct. 229, 92 L.Ed. 142 (1947); *Millhone v.. Swan Lumber Co.,* 2–83–0005 (Bkrtcy.S.D.Ohio 1983).

**22.** Although the only appellate level cases holding this may come from other circuits, this Court feels that they are extremely persuasive authority in the absence of authority to the contrary in this District or Circuit. The following excerpt from *Gustafson v. Wolferman, Inc.,* 73 F.Supp. 186, 192 (W.D.Mo.1947), expresses the Court's opinion on the precedential value of these opinions:

> The Federal Circuit Courts constitute a single system for the administration of justice. When one Circuit Court has fully considered and deliberately decided a question, every suggestion of propriety and fit public action demands that it should be followed by District Courts until modified by the Appellate Court of the Circuit in which such District Court is located, or by the Supreme Court of the United States.

See also *United States v. Finazzo,* 429 F.Supp. 803 (E.D.Mich.1977); *In re ·Morrison, supra.*

**23.** See Note 21, *supra.*

**24.** See Note 6, *supra,* and the corresponding textual material.

946

through Chapter 7. The debtors maintain their self respect, the unsecured creditors receive a higher payoff,[25] and the government benefits from a more stable tax base.[26] By allowing debtors to use § 1322(b)(5) to decelerate and reinstitute mortgages even after judgment, Chapter 13 becomes more attractive than Chapter 7. As discussed earlier, this seems to be what Congress envisioned when it enacted subsection (b)(5). As the Second Circuit Court of Appeals stated in the case of *In re Taddeo, supra,* at 25, "we do not believe that Congress labored for five years over this controversial question only to remit consumers debtors—intended to be the primary beneficiaries of the new Code—to the harsher mercies of state law." This Court agrees and, therefore, holds that the debtor's ability to decelerate and reinstitute his mortgage pursuant to § 1322(b)(5) is not prevented by the mortgagee's having obtained a state court judgment.

This is not to say, however, that this option is limitless. The states, the mortgagee and any potential foreclosure purchasers have a legitimate interest in the finality of already consummated foreclosure sales. In this case, the debtor filed his petition prior to the scheduled commencement of the foreclosure sale at which his home was to be offered for sale. Therefore, allowing the debtor to decelerate and reinstitute his mortgage will not impinge on the interests on the parties just described. If the debtor had filed after the commencement of the scheduled sale, this relief would not be available, because of the legitimate interests of these parties.

Although this might at first glance appear to provide the unscrupulous with a device to delay an inevitable foreclosure, a more thorough examination of the provisions of Chapter 13 will reveal that the Code contains sufficient safeguards to prevent such abuse. In order to be able to utilize the curative effects of § 1322(b)(5), the debtor must obtain confirmation of a Plan. If he cannot do so, the case can be converted to a liquidation proceeding or dismissed all together, thereby enabling the mortgagee to continue with his foreclosure. In order to obtain confirmation, the debtor must show that the Plan was proposed in good faith and that it is feasible. 11 U.S.C. § 1325(a)(3), (6). Furthermore, the debtor must be able to pay off the arrearages within a reasonable period of time, 11 U.S.C. § 1322(b)(5), which has been held to be a more stringent limitation than the three to five year limit imposed by § 1322(c). See *In re Pollasky,* 7 B.R. 770 (Bkrtcy.D.Col.1980). Hence, it becomes apparent that a debtor hopelessly in default cannot find any refuge by attempting to abuse the provisions of Chapter 13.

In light of the foregoing, the Court holds that the debtor's Plan must be, and is, confirmed.

IT IS SO ORDERED.

**25.** A recent report of the Comptroller General of the United States indicates that, on average, unsecured creditors receive 51% of their claims when the debtors choose to utilize Chapter 13. On the other hand, 97% of all unsecured creditors fail to receive any payment when debtors utilize the liquidation and discharge provisions of Chapter 7. *Report of the Comptroller General of the United States, Bankruptcy Reform Act of 1978—A Before and After Look,* July 20, 1983, pp. 55–57.

**26.** 26 U.S.C. § 166 allows a creditor a tax deduction for bad debts, such as those discharged in bankruptcy. If the amount of debt discharged is reduced through increased use of Chapter 13, rather than Chapter 7, tax revenues would necessarily increase.