In re Edward STOKES and Mary Rollins Stokes, Debtors.

Bankruptcy No. 83–01479–R.

United States Bankruptcy Court, E.D. Virginia, Richmond Division.

March 30, 1984.

John C. Somers, Richmond, Va., for debtors.

Winfrey T. Wade, Richmond, Va., for Heritage Savings & Loan.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter came before the Court upon the filing of an objection to confirmation by Heritage Savings and Loan Association of the debtors' Chapter 13 plan. After notice to creditors and other parties in interest, a hearing on confirmation and on the objection by Heritage Savings and Loan was held. The matter was argued by counsel and taken under advisement by this Court. After the submission of memoranda in sup-

port of their respective positions and after consideration of the applicable law, this Court renders the following opinion.

## STATEMENT OF FACTS

Relevant to this Court's determination in this matter the parties have stipulated the following facts:

1) Heritage Savings and Loan Association (the lender) holds a note made by the debtors dated February 1, 1982 in the original principal amount of $33,000.00 on which there is now due a principal balance of $32,886.92. This note is secured by a first lien deed of trust on the debtors' principal residence, which is located at 1804 Fourth Avenue, Richmond, Virginia.

2) The note provides for monthly payments by the debtors, however, the debtors have failed to make such monthly payments since May 1, 1983.

3) The deed of trust requires the lender to give thirty days written notice of default to the borrowers by certified mail prior to acceleration of the debt. On June 24, 1983, the lender gave such notice to the debtors.

4) On August 15, 1983 upon finding that the default had not been cured by the debtors at that time, the lender elected to accelerate the loan and notified the debtors of such acceleration.

5) On September 7, 1983 the substitute trustee under the deed of trust mailed to the debtors by certified mail notice that the deed of trust would be foreclosed on the debtors' residence at an auction sale to be conducted on October 5, 1983.

6) The deed of trust provided that the borrowers could reinstate the loan at any time prior to the fifth day before the sale of the property. However, the debtors did not exercise their right to reinstate the loan under the deed of trust.

7) On October 3, 1983 the debtors filed a Chapter 13 petition in bankruptcy thereby staying the foreclosure sale set for October 5, 1983.

8) On October 17, 1983, the debtors filed a Chapter 13 plan which provided, in part, that (a) the default in the mortgage loan made by the lender to the debtors would be "cured" by paying to the lender in monthly installments under the plan the amount of the arrearages due the lender over the first thirty-six months of the plan and that (b) the debtors would make all regular monthly payments to the lender outside the Chapter 13 plan.

9) On December 13, 1983 the lender objected to confirmation of the debtors' plan. A hearing on confirmation of and objection to the debtors' Chapter 13 plan was held on December 14, 1983, at which time this Court took the matter under advisement.

## CONCLUSIONS OF LAW

The debtors have proposed a Chapter 13 plan that seeks to cure the prepetition mortgage delinquency within the life of the plan, ignore or deaccelerate the acceleration in the mortgage made by the lender in calling the entire loan, and reinstate the original terms of the note by making the otherwise regular monthly payments to the lender outside the Chapter 13 plan. The lender has objected to this treatment under the plan arguing that the Bankruptcy Code does not permit a debtor to modify the rights of a holder of a secured claim where that claim is secured by a security interest in the debtors' principal residence, and arguing that the mortgage default in the instant matter is not a default that can be cured within the plan because once the loan is accelerated the last payment is no longer due after the date on which the final payment under the plan is due. Thus, the issue before the Court is whether a Chapter 13 debtor may cure a default in an accelerated deed of trust note, deaccelerate said note and reinstate its terms after a default and acceleration by the lender where such note is secured by a deed of trust on the debtors' principal residence.

The issue is one that has been addressed by numerous courts, however, it remains one of first impression in this district as well as this circuit, having not been addressed by the United States Court of Appeals for the Fourth Circuit. A split in the

circuits has resulted from the decisions of the only two circuits that have ruled on this issue. *In re Taddeo*, 685 F.2d 24 (2nd Cir.1982) (deacceleration permitted); *In re Houston First American Savings Association*, 718 F.2d 694 (5th Cir.1983) (deacceleration prohibited).[1] Therefore, this Court must decide which of the two approaches it should follow in resolving the matter before the Court.

■ The statutory provisions relevant to determination of the matter before the Court include:

Section 1322. *Contents of Plan.*

. . . . .

(b) Subject to subsections (a) and (c) of this section the plan may . . .

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims; . . .

(3) provide for the curing or waiving of any default;

. . . . .

(5) not withstanding paragraph 2 of this subsection, provide for the curing of any default within a reasonable time and the maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due; . . . .

11 U.S.C. § 1322(b). Although § 1322(b)(3) provides unequivocally that any default can be cured or waived, this more general provision must give way to the more specific provisions of § 1322, in particular § 1322(b)(2) and § 1322(b)(5).[2] Moreover, the clear language of § 1322(b)(5), which provides: "Notwithstanding paragraph 2 of this section," demonstrates that a resolu-

tion of the matter before the Court will turn on this Court's interpretation of § 1322(b)(5).[3] Therefore, the rights of holders of claims secured only by an interest in real property that is the debtors' principal residence *may be modified* in a Chapter 13 plan to the extent that a default is cured within a reasonable time, and payments are maintained while the case is pending, on a secured claim on which the last payment is due after the date on which the final payment under the plan is due.

The lender readily agrees with the Court's analysis to this point, but then concludes that no curing of the debtors' default in the instant matter is permitted because the lender's claim is one on which the last payment is due before the date on which the final payment under the plan is due. The lender reaches this conclusion by reasoning that the acceleration of the debtors' obligation has caused the last payment to be due immediately and, therefore, there is no payment that extends beyond the final payment under the plan. Initially, this reasoning is rather appealing and, in fact, was the approach adopted by the United States Court of Appeals for the Fifth Circuit in *In re Houston First American Savings Assoc.*, 718 F.2d 694 (5th Cir.1983). However, this Court would be remiss to not look behind the bare language of the Code to determine what was intended by Congress in enacting provisions for the curing of defaults in reorganization bankruptcy.

■ The result the lender essentially asks this Court to accept is that whenever a debtor fails to make one payment or falls in default for some other reason under a deed of trust or note that it may no longer reinstate the terms of the original note if the noteholder exercises its right to accelerate. This conclusion is dictated by the

---

**1.** A rehearing in *Houston* has been granted by the Fifth Circuit. 718 F.2d 699 (5th Cir.1983).

**2.** Note, nonetheless, that § 1322(b)(3) evinces a strong policy in the Bankruptcy Code to permit the curing of defaults in a debtor's existing obligations so that the debtor may reinstate obligations in its efforts to rehabilitate itself.

**3.** As stated by a recent commentator on the problem: "Ultimately, these matters are all symptoms of a problem of statutory construction, for in virtually identical circumstances courts have found no right to cure defaults and an unqualified right to do so." Sable, *A Chapter 13 Debtor's Right to Cure Default Under § 1322(b): A Problem of Interpretation*, 57 Am. Bankr.L.J. 127, 140 (1983).

lenders argument because under Virginia law and under the terms of most deeds of trust, a single default under such a note is cause for the lender or the trustee under the deed of trust to accelerate that note.[4] If the lender's position is accepted here once a single default occurs the note may be accelerated and the Chapter 13 debtor can never, without the lender's consent, cure that default and reinstate the original terms of the deed of trust note. Although, it is true in the instant matter that the debtors had a right to reinstate the obligation, Virginia law does not require such a provision to be included in a deed of trust.

Although the purposes and policies of the Bankruptcy Code have become somewhat axiomatic they are nonetheless true. Bankruptcy law is remedial legislation enacted to provide a debtor with a financial fresh start. The Bankruptcy Code, as most recently enacted, contains various provisions that aid the debtor in obtaining this fresh start. Among them are provisions that permit the debtor to claim and maximize his exemptions,[5] reject burdensome executory contracts,[6] and to cure or waive defaults in existing obligations with creditors.[7]

The curing of defaults is an aspect of reorganization bankruptcy whether that reorganization be for an individual with regular income, a railroad, a municipality, or a business corporation. See 11 U.S.C. §§ 901, 1123, 1161, and 1322.

In particular, § 1124 demonstrates clearly that in Chapter 11 proceedings the drafters of the Code believed that curing and reinstating an obligation was necessary and just. Unless unimpaired, a creditor has a right to vote on confirmation of a Chapter 11 reorganization plan. A creditor is impaired unless all rights remain, however, an exception to impairment is where the creditor's default is cured. Thus, the Code determined such cures to be so inher-

ently fair to secured creditors that the debtor need not solicit his vote for confirmation. With this understanding of § 1124, curing defaults in Chapter 11, pursuant to § 1123, is no different than curing defaults in Chapter 13. The same policies apply and the "unimpaired" status of the secured lender is the same.

■ In addition, by the clear and unequivocal language of § 1322(b)(3), Chapter 13 evinces the same strong policy of permitting the "curing or waiving of any default." It is argued that § 1322(b)(2) limits the rights to cure defaults pursuant to § 1322(b)(3) with regard to claims secured by a debtor's principal residence. However, the legislative history of § 1322 makes it quite clear that the curing of mortgage debt was contemplated specifically by the drafters of the Bankruptcy Code as evinced by the enactment of § 1322(b)(5). 124 Cong.Rec. H11,106 (daily ed. Sept. 28, 1978). Section 1322(b)(5) removes any doubt as to whether Congress intended to permit a debtor to cure a default on an obligation secured by his principal residence. See, H.R.Rep. No. 595, 95th Cong., 1st Sess. 429 (1977), U.S.Code Cong. & Admin.News 1978, 5787. Thus, the deacceleration and reinstitution of a previously accelerated note is inherent in the concept of "cure" as it is used in the Bankruptcy Code. *In re Anderson*, 29 B.R. 563, 565 (Bkrtcy.E.D.Va.1983). This Court agrees with and adopts the following statement by the United States Court of Appeals for the Second Circuit with regard to curing mortgage defaults under a Chapter 13 plan:

When Congress empowered Chapter 13 debtors to 'cure' defaults we think Congress intended to allow mortgagors to 'deaccelerate' their mortgage and reinstate its original payment schedule. We so hold for two reasons. First, we think that *the power to cure must comprehend*

---

**4.** Virginia Code § 55–59(6) provides in pertinent part: "... in the event of default in payment ... the trustee [under the deed of trust] shall declare all debts and obligations *at once* due and payable ...." *Va.Code* § 55–59(6) (Repl.Vol. 1981).

**5.** 11 U.S.C. § 522.

**6.** 11 U.S.C. § 365.

**7.** 11 U.S.C. §§ 901, 1123, 1124, 1161 and 1322.

the power to 'deaccelerate.' This follows from the concept of 'curing a default.' A default is an event in the debtor-creditor relationship which triggers certain consequences—here, acceleration. Curing a default commonly means taking care of the triggering event and returning to pre-default conditions. The consequences are thus nullified. This is the concept of 'cure' used throughout the Bankruptcy Code.

*In re Taddeo*, 685 F.2d at 26–27.

■ With the above discussion in mind, it should become clear that the "last payment" language in § 1322(b)(5) refers to when the last payment *would have been due* under the original mortgage note had it not been accelerated. Such an interpretation is necessary to give effect to the curative purpose Congress intended in enacting § 1322(b)(5). See *In re Taddeo*, 685 F.2d 24 (2nd Cir.1982); *In re Gwinn*, 34 B.R. 936, 11 B.C.D. 305 (Bkrtcy.S.D.Ohio 1983).

■ Although various courts have held that the curing of defaults and reinstatement of the original terms of the mortgage does not "modify" the rights of a creditor with a claim secured only by a debtor's principal residence, see 11 U.S.C. § 1322(b)(2); *In re Taddeo*, 385 F.2d at 27; *In re Gwinn*, 34 B.R. 936, 11 B.C.D. at 311, this Court is not convinced that such a cure does not modify the *rights* of such a secured creditor.[8] The rights of such a secured creditor exists under state law and although bankruptcy law prevails to the extent state law would frustrate the implementation of the federal statute, that does not mean that the rights of secured creditors are not modified where a mortgage is deaccelerated and reinstated. However, this Court has held earlier that § 1322(b)(5) clearly applies notwithstanding § 1322(b)(2)[9] and, therefore, without holding whether or not the lender's rights in this matter are modified by the debtor's attempt to cure, deaccelerate, and reinstate its obligation to the lender, this Court holds that pursuant to § 1322(b)(5) a debtor may cure such defaults and reinstate such obligation if done within a reasonable amount of time. Moreover, this Court is satisfied that such a holding is mandated by the Bankruptcy Code and certainly encouraged by the policies underlying that Code and is followed by a majority of courts [10] as well as commentators addressing the issue.[11]

■ In addition, the Court's holding does not endorse Chapter 13 debtors' abuse of the federal statute. As aptly articulated recently by the Bankruptcy Court for the Southern District of Ohio, various other provisions of Chapter 13 prevent a debtor from abusing the provisions of Chapter 13 of the Bankruptcy Code to the detriment of secured creditors. In *In re Gwinn*, 34 B.R. 936, 11 B.C.D. 305 (Bkrtcy.S.D.Ohio 1983) the court stated:

> Although this might at first glance appear to provide the unscrupulous with a device to delay an inevitable foreclosure, a more thorough examination of the provisions of Chapter 13 will reveal that the Code contains sufficient safeguards to prevent such abuse. In order to be able to utilize the curative effects of § 1322(b)(5), the debtor must obtain confirmation of a Plan. If he cannot do so,

---

**8.** The court in *Taddeo* may have confused the concept of "rights" with that of "claims." Section 1322(b)(2) prohibits modification of rights except as provided in § 1322(b)(5), whereas § 1322(b)(5) discusses the modification of claims. *See In re Taddeo*, 685 F.2d at 27.

**9.** See *supra* page 5.

**10.** *See, e.g., In re Taddeo*, 685 F.2d 24 (2nd Cir.1982); *In re Acevedo*, 26 B.R. 994 (E.D.N.Y. 1982); *In re Briggs*, 25 B.R. 317 (D.N.D.1982); *In re Davis*, 16 B.R. 473 (D.Kan.1981); *In re Morrison*, 35 B.R. 996 (S.D.Ohio 1983) (cited in *In re*

*Gwinn*, 34 B.R. 936, 11 B.C.D. 305 (Bkrtcy.S.D. Ohio 1983). As demonstrated by a lengthy discussion by the court in *In re Gwinn*, 11 B.C.D. 305, at least thirty (30) bankruptcy courts adopt this view. In fact, apparently only one court other than the Fifth Circuit in *Houston* has disagreed with this view since the publication of *In re Taddeo*. *See In re Clark*, 32 B.R. 711, C.C.H. ¶ 69,341 (W.D.Wis.1983).

**11.** *See, e.g.,* Sable, *supra* note 3; Comment, 30 U.C.L.A.L.Rev. 637 (1983); Comment, 43 Ohio St.L.J. 905 (1982).

the case can be converted to a liquidation proceeding or dismissed all together, thereby enabling the mortgagee to continue with his foreclosure. In order to obtain confirmation, the debtor must show that the Plan was proposed in good faith and that it is feasible. 11 U.S.C. § 1325(a)(3), (6). Furthermore, the debtor must be able to pay off the arrearages within a reasonable period of time, 11 U.S.C. § 1322(b)(5) which has been held to be a more stringent limitation than the three to five year limit imposed by § 1322(c). See *In re Pollasky*, 7 B.R. 770 (Bkrtcy.D.Col.1980). Hence, it becomes apparent that a debtor hopelessly in default cannot find any refuge by attempting to abuse the provisions of Chapter 13.

34 B.R. 936, 11 B.C.D. at 312.

In addition to the reasons discussed above, case law decided by the Fourth Circuit under the old Bankruptcy Act suggests that the Fourth Circuit would adopt the position taken by this Court in this matter. A similar issue was presented to the United States Court of Appeals for the Fourth Circuit in the case of *Hallenbeck v. Penn Mutual Life Insurance Company*, 323 F.2d 566 (4th Cir.1963).

Presented to the court in *Hallenbeck* was whether the referee in bankruptcy could enjoin the foreclosure on a debtor's principal residence. In that matter the creditor had begun foreclosure proceedings because the debtor had defaulted under the terms of the obligation by missing three monthly installments on the indebtedness. The creditor had exercised its rights of acceleration and instructed the trustee under the deed of trust to proceed to foreclose on the property pursuant to the terms of the deed of trust. However, the debtor filed a petition in bankruptcy and eventually had a wage earners plan confirmed by the referee pursuant to the provisions of Chapter XIII of the old Bankruptcy Act. In addition, upon petition by the debtor the referee entered an order enjoining the creditor's proposed foreclosure conditioning continuation of the injunction upon the debtor's substantial compliance with the confirmed wage earners plan.

The creditor appealed the injunctive order to the district court. The district court reversed the order of the referee ruling that the injunction was improper because the property covered by the deed of trust was owned by the debtor and his wife as tenants by the entirety and the latter was not a party to the proceeding. Thereafter, the debtor's wife filed bankruptcy and eventually a joint wage earners' plan for the two debtors, which was substantially similar to the original plan of the husband, was confirmed by the referee. At that time, the debtors moved the district court to set aside its former order terminating the injunction which prevented the foreclosure. The district court denied the debtors' motion and from that denial the debtors appealed the matter to the Fourth Circuit.

In reversing the district court, the Fourth Circuit stated:

> In addition to recognizing and giving effect to the plain provisions of the statute granting the injunctive power, the rationale of such decisions is that the legislation is remedial in nature; it should be liberally construed to effect its purpose, i.e., relief to and rehabilitation of debtors; and it is quite apparent that in certain instances the power to enjoin foreclosure proceedings may properly be used to further that purpose.

323 F.2d at 571. The issue before the Court now is essentially the same as that issue addressed by the Fourth Circuit in *Hallenbeck*. The form of the issue is different only because of the changes made in the bankruptcy law by the Bankruptcy Reform Act of 1978. Under the old Act creditors with claims secured by the debtor's residence could not be provided for under a wage earner's plan and, therefore, enjoining a foreclosure proceeding was the only manner in which a debtor could save his residence if he was in default. Just as the Fourth Circuit adopted a position consistent with the rehabilitative policies of bankruptcy law under the old Act this Court is of the opinion that the Fourth Circuit

would adopt a similar position with regard to the issue now before the Court. Moreover, to decide otherwise would leave the debtor with fewer rights under the new Code than were available under the old Act. Such a result would be clearly inconsistent with the Congressional intent underlying the enactment of the Bankruptcy Reform Act of 1978. 685 F.2d at 29.

The Court does not decide here whether a Chapter 13 debtor may cure and deaccelerate an obligation secured by a debtor's residence after a foreclosure is complete. If foreclosure was complete, it would appear that third party's rights may have intervened to an extent that to permit a Chapter 13 debtor to, at that time, cure and reinstate would impose undue hardship to third parties. In fact, the lien creditor may have released its lien on the property having been satisfied by the proceeds at foreclosure and title conveyed to a third-party. The Court notes the split among the various courts yet also recognizes that Virginia is one of few states that permits non-judicial foreclosure. At least one court addressing an analogous situation under similar law has permitted a Chapter 13 debtor to deaccelerate his deed of trust note and cure pre-petition default in the Chapter 13 plan. *In re Wilder*, 22 B.R. 294 (Bkrtcy.M. D.Ga.1982).

In summary this Court elects to adopt the approach articulated by the Second Circuit in *In re Taddeo* and currently followed by a majority of courts addressing the issue. Such approach is likely to be adopted by the United States Court of Appeals for the Fourth Circuit and it is the only approach which is consistent with the fresh start and rehabilitative policies for which the Bankruptcy Code was enacted to further. For these reasons, this Court will deny the objection to confirmation and confirm the debtors' Chapter 13 plan finding it to comply with the provisions of § 1322.