FEDERAL DEPOSIT INSURANCE CORPORATION *v.*
STEPHEN C. BOMBERO
(12074)

DUPONT, C. J., and O'CONNELL and LAVERY, Js.

Argued September 21, 1994—decision released April 17, 1995

*Robert C. Pinciaro,* with whom, on the brief, was *Serge G. Mihaly,* for the appellant (defendant).

*Alexander H. Schwartz,* with whom was *Monte E. Frank,* for the appellee (plaintiff).

O'CONNELL, J. The defendant, a judgment lienholder who was mistakenly omitted from foreclosure proceed-

ings brought by the plaintiff's predecessor, appeals from the trial court's granting of the plaintiff's application to discharge cash held in escrow, which had been substituted for the defendant's judgment lien.

The defendant argues that the trial court should not have granted the plaintiff's application because (1) there is no cause of action allowing the plaintiff to bring such an application, and (2) even if there was such a cause of action, the trial court improperly found that the defendant's lien was worthless. We affirm the judgment of the trial court.

The following facts are necessary to a disposition of this appeal. The defendant performed land surveying services for Gary Knauf, for which he was not compensated. The defendant brought suit against Knauf, obtained a $37,985.69 judgment and recorded a judgment lien on Knauf's property. The judgment lien was recorded subsequent to three previously recorded encumbrances. BankMart held a first mortgage in the principal amount of $500,000 and a second mortgage in the principal amount of $150,000. Saybrook Bank and Trust Company held a third mortgage in the principal amount of $53,000.

BankMart brought a foreclosure but mistakenly failed to name the defendant as a party to the action. Neither the owner of the equity nor any subsequent encumbrancer redeemed, and title became absolute in BankMart on July 27, 1991. BankMart was later declared insolvent, and the plaintiff succeeded to Bank-Mart's interest in the property.

When the plaintiff learned of the defendant's omission from the foreclosure proceedings, it brought three actions in rapid succession. The first was instituted pursuant to General Statutes § 49-30,[1] to remedy the omis-

---

[1] General Statutes § 49-30 provides: "When a mortgage or lien on real estate has been foreclosed and one or more parties owning any interest

sion of the defendant from the foreclosure action.[2] That action was brought on May 7, 1992, shortly before a sale of the property from the plaintiff to a third party that was scheduled for June 24, 1992. The trial court in the present case found that the § 49-30 action "could not be heard by the court before the scheduled sale." The § 49-30 action was still pending at the time of oral argument of the present case in this court.

Because of the imminence of the sale date, the plaintiff brought a second action against the defendant. This second action, an application to discharge the judgment lien or to substitute a bond or cash for the lien was commenced on May 20, 1992. In order to clear the title so that the sale could take place, the parties stipulated that $50,000 cash would be substituted for the defendant's judgment lien in exchange for the defendant's release of the lien.[3] Following the trial court's approval of the stipulation, the plaintiff withdrew this second action without a judgment being rendered.

The plaintiff then brought the present action on July 15, 1992, to "discharge or reduce bond given in substitution of judgment lien . . . [because] . . . there . . . [was] not probable cause to sustain the validity

---

in or holding an encumbrance on such real estate subsequent or subordinate to such mortgage or lien has been omitted or has not been foreclosed of such interest or encumbrance because of improper service of process or for any other reason, all other parties foreclosed by the foreclosure judgment shall be bound thereby as fully as if no such omission or defect had occurred and shall not retain any equity or right to redeem such foreclosed real estate. Such omission or failure to properly foreclose such party or parties may be completely cured and cleared by deed or foreclosure or other proper legal proceedings to which the only necessary parties shall be the party acquiring such foreclosure title, or his successor in title, and the party or parties thus not foreclosed, or their respective successors in title."

[2] Query as to whether § 49-30 creates a cause of action or whether it merely declares the rights of the parties vis-a-vis the omitted encumbrancers and prescribes who must be party to any action brought to cure the defect of omitting an encumbrancer.

[3] The $50,000 was deposited with a third party stakeholder.

of the respondent's claim or [because] the respondent's claim . . . [was] excessive.'' The plaintiff argued in the trial court that the lien was invalid because, inter alia, it was worthless, and the defendant would not have exercised his right of redemption even if he had been named in the foreclosure action.[4]

The trial court granted the plaintiff's application to discharge the lien on the ground that, due to the amount of the prior encumbrances on the property, the judgment lien in fact gave the defendant no security interest in the property. The court found that the value of the property was less than the value of the senior liens, and, therefore, even if the defendant had been named in the foreclosure action, he would not have redeemed to protect his judgment lien. Because the court concluded that the judgment lien was worthless as of the date that the defendant could have redeemed the property in the foreclosure action had he been given a law day, it discharged the cash that had been substituted for the lien.[5] The defendant appeals from this decision. We affirm the judgment of the trial court.

I

The defendant argues first that there is no cause of action allowing the trial court to provide the plaintiff with the remedy of a discharge of cash, substituted for a judgment lien, on these facts.[6] The plaintiff responds

---

[4] The Federal Deposit Insurance Corporation claimed that the lien was both invalid, because it did not conform to technical statutory requirements, and worthless, because of prior encumbrances. The trial court held that the lien was worthless and granted the application to discharge the case bond, without discussing the merits of the invalidity claim.

[5] Specifically, the trial court held that ''[the defendant] would not have redeemed the property to protect his judgment lien for $37,985.69. No reasonable business person would have done so. His lien was worthless . . . . Here, the worth of the property was less than the senior liens. [The defendant's] security interest would have been extinguished.''

[6] The defendant also argues that the trial court had no authority to allow substitution of cash for his lien. Because the defendant stipulated to this substitution, that argument has no merit.

that its action to discharge the judgment lien on substitution of bond or lien on other property, namely cash, and its subsequent action to release the cash were properly instituted pursuant to General Statutes §§ 52-380e[7] and 49-51,[8] respectively.[9] The plaintiff further claims that the cash should be discharged because there is no "probable cause to sustain the validity of the [defendant's] claim."

Section 52-380e provides for substitution of a lien on "other property." Here, the cash that was deposited with the third party stakeholder constituted the "other property." Section 49-51 provides for a hearing at which the trial court may determine a lien's validity. *PDS Engineering & Construction, Inc.* v. *Double RS,*

---

[7] General Statutes § 52-380e provides: "When a lien is placed on any real or personal property pursuant to section 52-355a or 52-380a, the judgment debtor may apply to the court to discharge the lien on substitution of (1) a bond with surety or (2) a lien on any other property of the judgment debtor which has an equal or greater net equity value than the amount secured by the lien. *The court shall order such a discharge on notice to all interested parties and a determination after hearing of the sufficiency of the substitution.* The judgment creditor shall release any lien so discharged by sending a release sufficient under section 52-380d, by first class mail, postage prepaid, to the judgment debtor." (Emphasis added.)

[8] General Statutes § 49-51 provides in pertinent part: "DISCHARGE OF INVALID LIEN. (a) Any person having an interest in any real or personal property described in any certificate of lien, which lien is invalid but not discharged of record, may give written notice to the lienor . . . to discharge the lien. Upon receipt of such notice, the lienor shall discharge the lien . . . . If the lien is not discharged within thirty days of the notice, that person may apply to the superior court for such a discharge, and the court may adjudge the validity or invalidity of the lien and may award the plaintiff damages for the failure of the defendant to make discharge upon request. . . ."

[9] The plaintiff did not cite these statutes in its application. The confusion and uncertainty concerning the statute under which the plaintiff brought this action could have been avoided if the plaintiff had complied with Practice Book § 109A which provides in pertinent part that "[w]hen any claim made in a complaint . . . is grounded on a statute, the statute shall be specifically identified by its number." See *Steele* v. *Stonington,* 225 Conn. 217, 227 n.7, 622 A.2d 551 (1993).

42 Conn. Sup. 460, 470, 627 A.2d 959 (1992).[10] The trial court held the hearing, determined that the lien had no validity, and the defendant appealed.

We conclude that there was a statutory cause of action on which the plaintiff could seek relief.

## II

The defendant next contends that the court improperly found that his judgment lien was worthless. We are not persuaded. Section 49-30 provides in part that the "omission . . . to properly foreclose [a] party . . . may be completely cured and cleared by deed or foreclosure *or other proper legal proceedings* to which the only necessary parties shall be the party acquiring such foreclosure title, or his successor in title, and the party . . . thus not foreclosed . . . ." (Emphasis added.)

The purpose of § 49-30 is to provide for a cure in the event that a party is omitted from foreclosure proceedings. This purpose is unambiguously apparent from the statutory language and its delineation of the methods of curing the omission "by deed or foreclosure or other legal proceedings." General Statutes § 49-30. Under the circumstances, this action constitutes the "other legal proceeding" referred to in the statute.

In deciding that the lien was worthless, the trial court heard the evidence and found that the property was valued at $707,000 at foreclosure and $525,000 at its private sale about one year later. The trial court also considered that, at the time that he would have been called upon to act if he had had a law day, the defendant would have been required to pay $767,181.41 to protect a judgment lien of $37,985.69[11] and, in

---

[10] The plaintiff had complied with the written notice requirement of § 49-51.

[11] The defendant's $36,705.69 judgment was rendered pursuant to a written stipulation with the defendant in that action that expressly stated that the defendant's judgment lien would be recorded subject to the two mort-

exchange, would have received property appraised at $707,000. In other words, the defendant would have paid approximately $60,000 more than the property was worth to protect his lien and would have taken it subject to the prior mortgage to the Saybrook Bank and Trust Company.

On the basis of these findings, the trial court determined that the defendant's lien was worthless because the property contained no equity to satisfy his lien, and that he would have permitted it to be extinguished during the foreclosure had he been named a defendant in that action.[12] The defendant never testified that he was ready, willing and able to redeem in the foreclosure and, on cross-examination, declined to say that he would have been willing to pay more for property than it was worth. The trial court found that a prudent investor would not have redeemed under these circumstances where the prior encumbrances exceeded the value of the property by approximately $115,000. The defendant did not appeal these factual findings, and, therefore, we are bound by them. See *Normand Josef Enterprises, Inc.* v. *Connecticut National Bank*, 230 Conn. 486, 507, 646 A.2d 1289 (1994).

Nothing has transpired since the foreclosure that would have imparted value to the judgment lien. In fact, the opposite is true. This issue originated when the plaintiff posted cash so that a private sale for $525,000 could take place two days later.[13] It was thus obvious that the property, which had been valued at $707,000 at the time of foreclosure, had depreciated by $182,000 when the plaintiff posted the cash.

gages to BankMart and the mortgage to Saybrook Bank and Trust Company, the total of which he understood to be $703,000. The defendant here personally signed this stipulation.

[12] See footnotes 4 and 5.

[13] The stipulation was entered into on June 22, 1992, and the closing on the private sale was scheduled for June 24, 1992.

In this case, we need not decide whether the trial court should have valued the defendant's lien at the time of foreclosure or at the time of the stipulation. The lien was worthless at either time. If, for example, there were evidence that the property had appreciated in value, an argument might plausibly be made that we should remand for a hearing to determine the value at the time the cash was posted. That is not, however, the factual scenario in the present case. Here, the property declined steeply in value and, on the basis of its selling price, which is indicative of value, was worth only $525,000 when the cash was posted. *New England Savings Bank* v. *Lopez*, 227 Conn. 270, 280, 630 A.2d 1010 (1993). Simply put, the defendant's judgment lien attached to no equity, and, because the deposit was substituted for the lien, it can have no greater value than the lien it replaced.

The defendant argues that the purpose of § 49-30 is to penalize the foreclosing plaintiff for missing him in its original foreclosure action. We are not persuaded. We find no justification for reading a penalty connotation into § 49-30. To the contrary, the statute's language unambiguously declares that it provides for a *cure* for the omission of an encumbrancer. "In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language . . . ." General Statutes § 1-1 (a). In common parlance as well as case law, "cure" means to restore to a prior state of health or soundness. *In re Laguna,* 114 B.R. 214, 218 (Bankr. 9th Cir. 1990); *In re Stokes,* 39 B.R. 336, 340 (Bankr. E.D. Va. 1984); *In re Estate of Correll,* 178 Kan. 618, 627, 290 P.2d 1050 (1955). We conclude that the legislature intended this statute to provide a means of restoring the title to the condition that would have existed had the encumbrancer not been omitted.

One text writer posits that § 49-30 creates an opportunity for an omitted lienholder to reap a substantial windfall. D. Caron, Connecticut Foreclosures (Sup. 1993) § 24.03A. We cannot accept Caron's reasoning that a windfall, or any other appreciation of a worthless judgment lien, is created by § 49-30. This theory would elevate the defendant's judgment lien to a priority immediately below the foreclosing bank. We see no reason why senior encumbrancers who have been foreclosed out should suddenly find that a mistake on the part of the foreclosing bank's attorney has promoted a junior encumbrancer over them. Foreclosure is an equitable remedy and such an elevation of a junior encumbrancer is not equitable.

The plaintiff argues that the trial court properly balanced the equities to meet the needs of justice. We agree. To permit the defendant to assert his judgment against the plaintiff would result in the defendant's being unjustly enriched at the plaintiff's expense because the plaintiff was never indebted to the defendant. Moreover, the defendant has not demonstrated that he has been harmed.

The record indicates that the defendant is not a neophyte in matters of this sort. He testified that he had been a land surveyor for forty years and had been a registered land surveyor for the past twenty-six years. Over the many years in which he had been involved in land related matters, he had developed extensive contact with real estate developers and had individually owned eight to ten parcels of real estate as investments.

We will not speculate on the defendant's motives in stipulating to the posting of cash, nor will we attempt to estimate the nuisance or negotiating value of the defendant's position. The fact remains that the trial court has determined that the lien had no value, and there was sufficient evidence to support this decision.

No further proceedings could change these figures. The practical effect of the trial court's decision is to declare that the defendant's judgment lien still has no value.

Foreclosure is an equitable action, permitting the trial court to examine all matters to ensure that "complete justice may be done." *Hartford Federal Savings & Loan Assn.* v. *Lenczyk,* 153 Conn. 457, 463, 217 A.2d 694 (1966). Thus, "[t]he determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court." *Kakalik* v. *Bernardo,* 184 Conn. 386, 395, 439 A.2d 1016 (1981).

It is also a basic principle of law that common sense is not to be left at the courtroom door; *State* v. *Zayas,* 195 Conn. 611, 620, 490 A.2d 68 (1985); *State* v. *Perez,* 10 Conn. App. 279, 291, 523 A.2d 508, cert. denied, 203 Conn. 810, 525 A.2d 524 (1987); and judges need not be more naive than other people. *Watts* v. *Indiana,* 338 U.S. 49, 52, 69 S. Ct. 1347, 93 L. Ed. 1801 (1949); *State* v. *Chisolm,* 29 Conn. Sup. 339, 344, 287 A.2d 389 (1971). The trial court exercised common sense as well as law and equity when it determined that even if he had had a law day, the defendant would not have redeemed and that the deposit substituted for his judgment lien should be discharged. We will not disturb a trial court's discretion unless it has been "manifestly abused." *Hall* v. *Dichello Distributors, Inc.,* 6 Conn. App. 530, 541, 506 A.2d 1054, cert. denied, 200 Conn. 807, 512 A.2d 230 (1986). In the present case, the trial court did not abuse its discretion because its decision complies with the law and conforms to an equity court's duty to do justice.

The judgment is affirmed.

In this opinion LAVERY, J., concurred.

DUPONT, C. J., dissenting. I respectfully dissent.

General Statutes § 49-30 provides that the "omission . . . to properly foreclose . . . may be completely cured and cleared by deed or foreclosure *or other proper legal proceedings* to which the only necessary parties shall be the party acquiring such foreclosure title, or his successor in title, and the party . . . thus not foreclosed . . . ." (Emphasis added.) The intent of the statute, to cure and to provide a remedy for the omission of a party from foreclosure proceedings, is apparent from its language. The type of cure is also apparent. The cure can consist of foreclosure, conveyance or other legal proceedings.

The majority agrees that the remedy for the omission in this case is a legal proceeding other than foreclosure or conveyance and implies that money damages would have been appropriate if the defendant's lien had value. In deciding that the defendant's lien had no value in this case, the majority concludes that the defendant would not have redeemed the property had he been named in the foreclosure proceeding, nor would he have redeemed if the foreclosure action had taken place at the time he executed the stipulation with the plaintiff.

I disagree with the majority's conclusion because the majority considers only redemption in determining the value of the defendant's lien and, having assumed that redemption is the remedy, then considers the amount of the encumbrances senior to the defendant in determining whether the defendant would have redeemed the property. The remedy of redemption is no longer possible in this case, and, even if it were, § 49-30 does not allow other lienholders whose interests were previously foreclosed to participate in the statutory action. In my opinion, the question to be resolved to determine the value of the defendant's lien is not whether the defendant would have redeemed the property, either

at the time of the foreclosure or at the time of the stipulation, but whether the lien had any value as of the date the parties stipulated that cash could be substituted for it in exchange for the defendant's release of the lien.

Either an omitted party or a party who foreclosed, or their successors, may bring a § 49-30 action to cure a situation created solely by the foreclosing party. The purpose of a § 49-30 action is to extinguish the interest that was not foreclosed. Its language does not put omitted parties in the position they would have been in had they been part of the foreclosure proceedings. Because all of the interests of the mortgagees other than that the first mortgagee were extinguished by the time of this § 49-30 proceeding, no holder of those mortgages can play a part in the statutory action. D. Caron, Connecticut Foreclosures (Sup. 1993) § 24.03A. When title vests upon the failure of other encumbrancers to redeem the property, title is free of all the foreclosed interests. *First Bank* v. *Simpson*, 199 Conn. 368, 373–74, 507 A.2d 997 (1986). Essentially, the interest of the omitted lienholder survives foreclosure. See R. Bowmar, "Mortgage Foreclosure in New York: Omitted Lienors," 22 Real Property, Probate and Trust Journal 509, 516 (1987); see also *Loomis* v. *Knox*, 60 Conn. 343, 350, 22 A. 771 (1891). Because the presence in a § 49-30 action of the other parties whose interests were foreclosed by the foreclosure judgment is not required by the statute, the original foreclosure proceeding cannot be reconstructed. Also, a § 49-30 action is brought after a judgment of foreclosure has been rendered, when the fair market value of the property might be very different. The purpose of the statute is to cure the omission and to provide a remedy to the lienholder who was omitted from a proceeding in which he had a right to participate. It does not attempt to reconstruct the past.

The right to redeem in a foreclosure action is not the only right lost by omitted lienholders. Such lienholders have also lost the right to move for foreclosure by sale pursuant to General Statutes § 49-24, if they determine that a sale may provide funds out of which payment of their liens may come. *First Bank* v. *Simpson*, supra, 199 Conn. 374. Also, in the event a sale takes place, a junior encumbrancer may be entitled to costs.

One authority has stated that an omitted lienholder acquires, pursuant to § 49-30, "the potential for reaping a substantial windfall," since the omitted lienholder would need only to pay off the debt of the first mortgage to acquire title to property that may have been valued in excess of the first mortgage. See D. Caron, Connecticut Foreclosures, supra, § 27.03A. For example, in this case, the principal of the first mortgage debt was $500,000 and the property was valued at $707,000 as of the date of the foreclosure action, and was sold nearly one year later for $525,000. Caron's conclusion assumes that the remedy being provided to the omitted lienholder is redemption. The statute, however, provides three different remedies in most instances, namely deed, foreclosure or other proper legal proceedings. The trial court would probably exercise its discretion to choose a remedy other than foreclosure in the event that redemption would provide the omitted lienholder a substantial windfall.

In this case, the title to the real estate is no longer in the plaintiff and the lien no longer exists. The defendant, after having released his lien, could no longer be given the remedy of redemption, nor could the cure for the omission any longer be redemption. The remedy of "by deed" also no longer existed, and, therefore, the defendant's remaining recourse for his omission, for which he could also have instituted suit pursuant to § 49-30, is money damages.

Section 49-30 gives the trial court broad equitable jurisdiction to entertain such questions as are necessary to do complete justice. *Hartford Federal Savings & Loan Assn.* v. *Lenczyk*, 153 Conn. 457, 463, 217 A.2d 694 (1966). The determination of the amount of damages due the defendant should be based on considerations such as (1) the length of time between the original foreclosure action and the § 49-30 action, (2) whether the omitted lienholder relied on or changed his position in reliance on the existence of the lien, (3) whether the foreclosing party received proceeds from a title insurance policy because of the omission, (4) whether the omitted lienholder expended funds for legal fees, and (5) whether the real estate depreciated or appreciated in value due to improvements or a fluctuation in the market.[1]

I would reverse the judgment and remand the case for a hearing to determine the value of the defendant's lien as of the time he agreed to release it, taking into account the factors previously discussed.

---

[1] A factor such as the degree of sophistication of the lienholder would be irrelevant because the statute concerns the omission not the identity of the lienholder. Nor would it matter why the lienholder was omitted. *Milici* v. *Ferrara*, 133 Conn. 141, 144, 48 A.2d 562 (1946).